

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
April 5, 2023 02:15 PM
     PAVAN PARIKH
   Clerk of Courts
 Hamilton County, Ohio
CONFIRMATION 1304737
```

**KEVIN MAGLEY-JONES**  **A 2301389**

**vs.**

**NEW HOUSING OHIO INC**

**FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND**

**PAGES FILED: 17**

EXHIBIT 1

EFR200

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| KEVIN MAGLEY-JONES<br>2112 Tullis Dr.<br>Middletown, OH 45042 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES AND** |
| | ) | **INJUNCTIVE RELIEF** |
| NEW HOUSING OHIO, INC.<br>4055 Executive Park Dr., #240<br>Cincinnati, OH 45241 | ) ) ) ) | **(JURY DEMAND ENDORSED**<br>**HEREIN)** |
| **Serve also:**<br>NEW HOUSING OHIO, INC. c/o<br>Scott Boone (Stat. Agent)<br>4055 Executive Park Dr.<br>Cincinnati, OH 45241 | ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiff Kevin Magley-Jones, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Magley-Jones is a resident of the city of Middletown, Butler County, Ohio.

2. Defendant NEW HOUSING OHIO, INC. ("NHO") is a domestic not-for-profit corporation that conducts business throughout the state of Ohio.

3. NHO is, and was at all times hereinafter mentioned, Magley-Jones's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq.*, and Ohio R.C. §4112, *et seq*.

4. Within 300 days of the adverse employment actions described herein, Magley-Jones dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") and Ohio Civil Rights Commission ("OCRC") against NHO, Charge No. 473-2022-02052 ("EEOC Charge").

5. On or about January 19, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Magley-Jones regarding his EEOC Charge.

6. Magley-Jones received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which had been attached hereto as Plaintiff's Exhibit 1.

7. Magley-Jones has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

8. Magley-Jones has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

## JURISDICTION & VENUE

9. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

10. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

11. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

12. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

13. Magley-Jones is a former employee of NHO.

14. At all times noted herein, Magley-Jones was qualified for his position with NHO.

15. At all times noted herein, Magley-Jones could fully perform the essential functions of his job, with or without reasonable accommodation.

2

16. Magley-Jones worked for NHO as a director of property management from February 15, 2022, until NHO unlawfully terminated his employment on or about May 10, 2022.

17. Magley-Jones is homosexual, placing him in a protected class for his sex/gender and sexual orientation.

18. Magley-Jones suffers from depression, anxiety, PTSD, ADHD, and bipolar disorder, placing him in a protected class for his disabilities.

19. NHO had notice of Magley-Jones's protected classes during his employment.

20. To the best of his knowledge, Magley-Jones was the only LGBT employee at NHO.

21. Magley-Jones came to his position after interviews with chief operating officer Teresa Carrier and the rest of the corporate office, including the chief executive officer Scott Boone, chief administrative officer and human resources representative Shannon Stamper, and some others.

22. Magley-Jones gave notice to NHO of his sexual orientation and marriage to his husband shortly after his hire.

23. Shortly before Magley-Jones' employment, NHO had its yearly Real Estate Assessment Center ("REAC") and Management and Occupancy Review ("MOR") inspections with the Ohio branch of the U.S. Department of Housing and Urban Development ("HUD").

24. These inspection results were quite negative, so NHO tasked Magley-Jones with bringing the worksite up to HUD code.

25. This would be a long process, but in HUD's follow-up inspections, Magley-Jones had already made a 10-percentage point difference in the REAC results.

26. Magley-Jones had also obtained a better-than-previous, though still not satisfactory, rating on the MOR inspection.

3

27. By March, Magley-Jones managed to bring the MOR inspections to a satisfactory rating.

28. Magley-Jones was working substantial hours for NHO, but his excellent work was showing good progress for the property.

29. Due to his increasing workload at NHO, Magley-Jones had to miss a vacation with his family.

30. This missed vacation, along with the enormous hours worked, amplified Magley-Jones's symptoms of his disabilities. He gave notice thereof to NHO.

31. As a result of the drastically increased stress, Magley-Jones began to experience suicidal ideations, a problem he had faced previously.

32. As a result, Magley-Jones checked himself into a psychiatric hospital on or about March 21, 2022, and stayed through March 29.

33. Magley-Jones's husband, Robert Magley, gave notice of the hospital stay to Carrier shortly after it began.

34. Magley-Jones later provided a medical note for his stay, as required by NHO, and had a few conference calls with assistant director Lynn Wilcoxson to stay up to date.

35. Magley-Jones returned to work on or about, March 30, 2022, and provided his doctor's note to Carrier. This gave additional notice to NHO of his protected disability class.

36. After Magley-Jones returned from his hospital stay, he noticed that he was now being treated differently in the office and was largely ignored by his colleagues.

    a. For example, director of facilities and maintenance Patrick Baldwin began to push back on Magley-Jones's leadership.

    b. Baldwin essentially verbally fought Magley-Jones for power in the office.

37. Magley-Jones reported these issues with Baldwin, as well as other employees, to Carrier and Stamper in the corporate office from late March into early April.

38. NHO corporate did nothing in response to Magley-Jones's complaints.

39. As additional examples, two of Magley-Jones's subordinates, administrative assistant Deborah LNU and inspection coordinator Edward Smith, outright refused to follow his instructions.

40. Magley-Jones had instructed Smith not to perform inspections on a specific property until 9 AM so that he could attend too, but Smith had performed the full inspection before Magley-Jones had even arrived.

41. Magley-Jones reported this incident to Carrier too, who said she would handle it.

42. Once again, nothing was done by NHO corporate in response to Magley-Jones's complaint about Smith.

43. Magley-Jones had also instructed Deborah LNU to send out a letter to NHO's tenants that introduced him as the current property manager.

44. Deborah LNU outright refused, saying that she did not take orders from Magley-Jones, but rather from Carrier.

45. Magley-Jones reported this to Carrier again, but his complaint was largely ignored.

46. After Magley-Jones filed a complaint, Smith called Magley-Jones a "fag hag" for reporting him.

47. This was a direct slur against Magley-Jones's sexual orientation.

48. Again, Magley-Jones reported this to Carrier, who stated she would investigate the incident.

49. This constituted a protected complaint of gender/sex and sexual orientation discrimination.

50. Again, NHO largely ignored Magley-Jones's complaint.

51. NHO had a building in Franklin, Ohio that it had acquired and began remodeling in late April 2022.

52. In the process of the remodel and move, NHO found one unit had a bedbug infestation.

53. In an effort to handle the situation, Magley-Jones called several pest control companies, including Terminix and McCauley Pest Control.

54. After some discussion, Terminix would not be able to come to the site for a week or more, but McCauley was available the next day, so Magley-Jones scheduled McCauley to take care of the bedbug infestation.

55.  Magley-Jones informed Baldwin that he had scheduled McCauley for the next day, which infuriated Baldwin.

56. Baldwin yelled at Magley-Jones for hiring a company other than Terminix for the process.

57. To the best of Magley-Jones's knowledge, NHO had no contractual or other requirements to work with Terminix exclusively, so he suspected that Baldwin may have had another reason for wanting Terminix to handle the situation.

58. McCauley came out the next day as expected and dealt with the bedbug infestation.

59. After Baldwin continued to push back against Magley-Jones's authority, Magley-Jones again reported Baldwin to NHO.

60. Again, Magley-Jones's complaint was met with no useful response from NHO.

61. Magley-Jones followed up with Boone and again reported that he was tired of this pushback from his subordinates and needed a change, otherwise he was considering resigning.

62. Again, Carrier promised she would investigate and reprimand the offender, but again, nothing came of Magley-Jones's complaint.

63. In early May 2022, NHO had a property management meeting.

64. The overall consistent finding was that NHO employees needed to do a better job communicating with one another.

65. On or about May 10, 2022, as Magley-Jones was working from home, he received a letter from NHO "accepting [his] resignation."

66. Magley-Jones had not resigned, so he spoke with Carrier about the letter.

67. Magley-Jones told Carrier he was not resigning, but she said his termination stood regardless.

68. This constituted the formal and unlawful termination of Magley-Jones's employment.

69. This termination of Magley-Jones's employment constituted an adverse employment action.

70. There was a causal connection between Magley-Jones's disability and NHO's termination of Magley-Jones's employment.

71. There was a causal connection between Magley-Jones's gender/sex and sexual orientation and NHO's termination of Magley-Jones's employment.

72. NHO actually terminated Magley-Jones's employment in an act of disability discrimination.

73. NHO actually terminated Magley-Jones's employment in an act of gender/sex and sexual orientation discrimination.

74. NHO actually terminated Magley-Jones's employment in an act of retaliation for his complaints of discrimination.

75. As a result of the above, Magley-Jones has suffered and will continue to suffer damages.

**COUNT I: SEXUAL ORIENTATION DISCRIMINATION UNDER R.C. §4112,** *et seq.*

76. Magley-Jones restates each and every prior paragraph of this Complaint as if it were fully restated herein.

77. Magley-Jones is homosexual, placing him in a protected class for his sexual orientation.

78. Defendant treated Magley-Jones differently than other similarly situated employees based on his sexual orientation.

79. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's sexual orientation.

80. Defendant's termination of Magley-Jones's employment was an adverse employment action against him.

81. Defendant terminated Magley-Jones without just cause.

82. Alternatively, Defendant's purported reason(s) for Magley-Jones's employment termination was pretextual.

83. Defendant actually terminated Magley-Jones's employment due to his sexual orientation.

84. Defendant violated R.C. § 4112, *et seq.* by terminating Magley-Jones's employment because of his sexual orientation.

85. Defendant violated R.C. § 4112, *et seq.* by treating Magley-Jones differently from other similarly situated employees outside his protected class.

86. Magley-Jones suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

87. As a direct and proximate result of Defendant's conduct, Magley-Jones suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

8

## COUNT II: SEXUAL ORIENTATION DISCRIMINATION UNDER TITLE VII

88. Magley-Jones restates each and every prior paragraph of this Complaint as if it were fully restated herein.

89. Magley-Jones is homosexual, placing him in a protected class for his sexual orientation.

90. Defendant treated Magley-Jones differently than other similarly situated employees based on his sexual orientation.

91. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's sexual orientation.

92. Defendant's termination of Magley-Jones's employment was an adverse employment action against him.

93. Defendant terminated Magley-Jones without just cause.

94. Alternatively, Defendant's purported reason(s) for Magley-Jones's employment termination was pretextual.

95. Defendant actually terminated Magley-Jones's employment due to his sexual orientation.

96. Defendant violated Title VII by terminating Magley-Jones's employment because of his sexual orientation.

97. Defendant violated Title VII by treating Magley-Jones differently from other similarly situated employees outside his protected class.

98. Magley-Jones suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to Title VII.

99. As a direct and proximate result of Defendant's conduct, Magley-Jones suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

9

## COUNT III: GENDER DISCRIMINATION UNDER R.C. §4112, *et seq.*

100. Magley-Jones restates each and every prior paragraph of this Complaint as if it were fully restated herein.

101. Magley-Jones is a member of a statutorily protected class based on his gender under R.C. § 4112.02.

102. Defendant treated Magley-Jones differently than other similarly situated employees based on his gender.

103. Defendant discriminated against Magley-Jones on the basis of his gender throughout his employment with the company.

104. Defendant terminated Magley-Jones's employment without just cause.

105. Alternatively, Defendant's cited reason for Magley-Jones's termination was pretext.

106. Defendant terminated Magley-Jones's employment based on his gender.

107. Defendant's discrimination against Magley-Jones based on his gender violates R.C. § 4112.01 *et seq.*

108. Magley-Jones suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

109. As a direct and proximate result of Defendant's conduct, Magley-Jones suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: GENDER DISCRIMINATION UNDER TITLE VII

110. Magley-Jones restates each and every prior paragraph of this Complaint as if it were fully restated herein.

10

111. Magley-Jones is a member of a statutorily protected class based on his gender under Title VII.

112. Defendant treated Magley-Jones differently than other similarly situated employees based on his gender.

113. Defendant discriminated against Magley-Jones on the basis of his gender throughout his employment with the company.

114. Defendant terminated Magley-Jones's employment without just cause.

115. Alternatively, Defendant's cited reason for Magley-Jones's termination was pretext.

116. Defendant terminated Magley-Jones's employment based on his gender.

117. Defendant's discrimination against Magley-Jones based on his gender violates Title VII.

118. Magley-Jones suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to Title VII.

119. As a direct and proximate result of Defendant's conduct, Magley-Jones suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: DISABILITY DISCRIMINATION UNDER R.C. § 4112.02.

120. Magley-Jones restates each and every prior paragraph of this Complaint as if it were fully restated herein.

121. Magley-Jones suffers from depression, anxiety, PTSD, ADHD, and bipolar disorder, placing him in a protected class for his disabilities.

122. Magley-Jones is disabled.

123. In the alternative, NHO perceived Magley-Jones as being disabled.

124. Magley-Jones's condition constituted a physical impairment.

125. Magley-Jones's condition substantially impaired one or more of his/her major life activities including working.

126. NHO perceived Magley-Jones's condition to substantially impair one or more of his major life activities including working.

127. NHO treated Magley-Jones differently than other similarly-situated employees based on his disabling conditions.

128. NHO treated Magley-Jones differently than other similarly-situated employees based on his perceived disabling conditions.

129. On or about May 10, 2022, Defendant terminated Magley-Jones's employment without just cause.

130. Alternatively, Defendant's cited reason for Magley-Jones's termination was pretext.

131. Defendant terminated Magley-Jones's employment based on his disability.

132. Defendant terminated Magley-Jones's employment based on his perceived disability.

133. Defendant violated R.C. § 4112.02 when it discharged Magley-Jones based on his disability.

134. Defendant violated R.C. § 4112.02 when it discharged Magley-Jones based on his perceived disability.

135. Defendant violated R.C. § 4112.02 by discriminating against Magley-Jones based on his disabling condition.

136. Defendant violated R.C. § 4112.02 by discriminating against Magley-Jones based on his perceived disabling condition.

137. Magley-Jones suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

12

138. As a direct and proximate result of Defendant's conduct, Magley-Jones suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VI: DISABILITY DISCRIMINATION UNDER THE ADA

139. Magley-Jones restates each and every prior paragraph of this Complaint as if it were fully restated herein.

140. Magley-Jones suffers from depression, anxiety, PTSD, ADHD, and bipolar disorder, placing him in a protected class for his disabilities.

141. Magley-Jones is disabled.

142. In the alternative, NHO perceived Magley-Jones as being disabled.

143. Magley-Jones's condition constituted a physical impairment.

144. Magley-Jones's condition substantially impaired one or more of his/her major life activities including working.

145. NHO perceived Magley-Jones's condition to substantially impair one or more of his major life activities including working.

146. NHO treated Magley-Jones differently than other similarly-situated employees based on his disabling conditions.

147. NHO treated Magley-Jones differently than other similarly-situated employees based on his perceived disabling conditions.

148. On or about May 10, 2022, Defendant terminated Magley-Jones's employment without just cause.

149. Alternatively, Defendant's cited reason for Magley-Jones's termination was pretext.

150. Defendant terminated Magley-Jones's employment based on his disability.

13

151. Defendant terminated Magley-Jones's employment based on his perceived disability.

152. Defendant violated the ADA when it discharged Magley-Jones based on his disability.

153. Defendant violated the ADA when it discharged Magley-Jones based on his perceived disability.

154. Defendant violated the ADA by discriminating against Magley-Jones based on his disabling condition.

155. Defendant violated the ADA by discriminating against Magley-Jones based on his perceived disabling condition.

156. Magley-Jones suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to the ADA.

157. As a direct and proximate result of Defendant's conduct, Magley-Jones suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT VII: RETALIATION

158. Magley-Jones restates each and every prior paragraph of this complaint as if it were fully restated herein.

159. As a result of NHO's discriminatory conduct described above, Magley-Jones complained about the discrimination he experienced.

160. In late April 2022, Magley-Jones made a protected complaint of gender/sex and sexual orientation discrimination due to his subordinate's use of a slur against him.

161. On or about May 10, 2022, NHO terminated Magley-Jones's employment.

162. The temporal proximity of Magley-Jones's protected complaint and the termination of his employment implies that he was terminated in retaliation for his protected complaint.

163. Defendant's actions were retaliatory in nature based on Magley-Jones's opposition to the unlawful discriminatory conduct.

164. Pursuant to Title VII and R.C. §4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

165. Magley-Jones suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to Title VII and R.C. § 4112.01 *et seq.*

166. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Magley-Jones, he has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Magley-Jones demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

15

    v.    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge his personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Magley-Jones for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Magley-Jones's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Matthew Bruce*
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
**SPITZ, THE EMPLOYEES' LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, Ohio 45246
Phone: (216) 291-0244
Fax: (216) 291-5744
Email: matthew.bruce@spitzlawfirm.com
Email: evan.mcfarland@spitzlawfirm.com

*Attorneys for Plaintiff Kevin Magley-Jones*

16

## JURY DEMAND

Plaintiff Kevin Magley-Jones demands a trial by jury by the maximum number of jurors permitted.

>  */s/ Matthew Bruce*
>  Matthew G. Bruce (0083769)
>   Trial Attorney
>  **SPITZ, THE EMPLOYEES' LAW FIRM**